Bissell, J.,
delivered the opinion of the court.
Dennis Gibhs sued Maria Gibbs on a promissory note for . §500, dated in July, 1892, and payable to Andrew Gibbs. He alleged a transfer to Wilber Gibbs and an indorsement to himself. The labor of stating the whole case may be avoided and yet enough remain to make the decision plain. To this very simple cause of action the defendant pleaded many and divers defenses. She denied the transfer for a valuable consideration to Wilber or the assignment by him to the plaintiff, and averred the title still to be in Andrew. There was then set out in this plea two other notes • said to have been given by Andrew and purchased by the defendant, and on this title to the latter paper she pleaded a set-off. In addition t.o her various defenses she filed a cross complaint wherein she set up the execution by Dennis Gibbs of a promissory note in 1882 for §789.50, with the usual allegations of nonpayment. In a like manner she pleaded by way of cross action, sundry other promissory notes and interest coupons. The pleading contained eighteen different cross actions. It will be observed these several notes were dated in 1882 and had matured many years prior to the bringing of the present suit. The plaintiff, replied and pleaded the statute of limitations. The bar appeared on the face of the-complaint, but there was an averment of a part payment on the 5th of November, 1887-The evidence tended to show negotiations between the defendant and M. H. Cheney looking to the purchase of the two notes, which were pleaded as a set-off. Cheney was the agent of, the owner of the notes, but whether he had power to sell and convey, or make terms, is not satisfactorily settled. At all events, the negotiations culminated in an offer to purchase the notes for a given sum. Cheney stated they could be purchased for this amount, and promised to communicate with .the owner in the East and procure the notes. They were to be paid for when delivered. The arrangement was to put the notes into the bank where the purchaser could get them on the payment of the money. There was no definite or *370 specific agreement for the transfer of the title at the time of the negotiations in August, nor was any contract or writing entered into between the parties whereby it can be legally said the title passed as a result of the deal. With reference to the cross complaints this only need be said; the notes were barred by the statute of limitations, and there was nothing to remove the bar, unless the indorsements of payment on the back of the several notes operated as a new promise under the well recognized rule.
The circumstances of these indorsements and what are claimed to be payments are somewhat peculiar. George Gibbs, the husband of Maria, the defendant, had been engaged in mercantile business in the San Luis Valley. He became embarrassed and turned the goods over to Dennis to close the business out and settle with the banking concern to which George was indebted. We need not go any farther into the details of this transaction. To arrange the affairs in a businesslike way and possibly for George’s protection, Dennis executed to George divers promissory notes in the total 'amount of the supposed value of the goods. The goods were to be sold and the proceeds turned over to the bank. Dennis, who had become a debtor to the bank in some way in this transaction, was to have a credit when the goods were sold. It need not be determined whether as between Dennis and George there was an actual purchase and sale and therefore a liability on this paper, for the whole matter turns on a different consideration. The stock was sold during the years 1883 and 1884, and the money turned over to the bank. Dennis' got a credit in the bank for the amount which the goods brought, which was in the neighborhood of a couple of thousand dollars. George seems to have had some difficulty in ascertaining -what was realized from the sale and the date of the credit. ■ At'all events he did not learn till 1887 what credit the- bankers had given Dennis. Accordingly in November,T887, -he computed the proportion which the total credit bore to each individual piece of paper, and'indorsed on each note- the proportionate sum'which was the credit each *371 note was entitled to. This indorsement under .these circumstances he claims constitutes a payment which removes the bar and makes a new promise on which the action will lie'.
While the suit was pending the plaintiff sued out a dedimus to take the depositions of divers witnesses in Wyoming. The writ was irregular, but under it the testimony of the witnesses was taken and the depositions returned. No cross interrogatories were filed. It 'Is^fcnceded the notice was regular and in apt time, and b^figtoi a mistake of the clerk in the designation of the person to whom the authority ran to take the testimony, the depositions would have been useful as evidence. On their return the defendant filed a motion to suppress for this irregularity. The motion was sustained. The court however made a somewhat extraordinary order: “ that the plaintiff be and is hereby permitted to withdraw the depositions etc. to which objections have been filed, and that the clerk may issue a new commission correcting the technical omission in the former commission, it not designating the person named by any official title.” Whereupon the plaintiff sued out another dedimus without notice and proceeded to retake the depositions. Whether the old depositions were simply reformed does not appear. When they were refilled, a motion was made to suppress and the question was preserved by apt objections. These were overruled and the depositions were received in evidence. They contained important testimony and may have had great bearing upon the decision of the suit. Judgment was entered for the plaintiff and the defendant has appealed.
But for the error committed by the court in permitting the depositions to be used, the judgment would be affirmed. We have been referred to no statute and have discovered none which authorized the court to permit a party, to take depositions without a strict .compliance with the statute. There is no known way by which.depositions of witnesses living out of the state can be taken, except on due observance of the statutory course. Any. deviation from the provisions of the chapter on this,subject has in this state .been .held fatal, and *372 the use of depositions erroneously taken to constitute an error for which a cause must be reversed. Argentine Falls Silver Mining Co. v. Molson, 12 Colo. 405.
A Texas case was cited which seems to recognize the practice as entirely regular. We are unadvised as to what the Texas statute may be, but in any event it cannot control the construction of our own act on this subject. Without some statutory authority the court is powerless to abridge the time of the notice which must be given to the opposite party or the service of the interrogatories which are conditions precedent to the exercise of the right to take foreign depositions. The defendant was under no obligations to ask for time to file cross interrogatories but might rely on the failure of the plaintiff to pursue the required statutory course. The depositions were not properly received and were inadmissible on the trial.
As this case must go back for another trial, we are under some obligation to dispose of two questions which have been discussed by counsel and which are legitimately presented by the record. To relieve the parties of the expense and trouble-of a retrial of issues which are in no way sustained by the testimony and which must be eliminated from the consideration of the jury, unless the case is varied by subsequent proof, we will dispose of them. It is exceedingly clear to us that the right of set-off did not inure to the defendant as to the two notes which were purchased of Stilman through his agent Cheney. Appellant’s counsel properly conceded the lack of right on the part of the defendant to buy claims after the commencement of the action and set them up as defenses in the suit. A set-off cannot be thus acquired. The only question then is, when was the defendant’s purchase made and what are her rights thereunder. It cannot be successfully maintained under the testimony as it now stands that the transaction between George and Cheney amounted to a purchase whereby the title to the two notes vested in the defendant and gave her the right to set them off against the plaintiff’s claim. To render these notes available the title *373 must have vested before the institution of the suit. The proof showed an agreement to pay the money and receive the notes. The two acts were to be concurrent and there was no arrangement for the transfer of the title until the money should be paid. Under these circumstances there was no right of set-off as to the two notes procured from S til man.
There is a like trouble with the several cross complaints. Undoubtedly the notes and coupons were all barred unless the indorsement stopped the running of the statute. The circumstances surrounding the indorsement and which in reality constituted the payment remove all possible question concerning this matter. The notes were given in 1883. The indorsement was the result of an application by George of sundry credits which the Bank gave to Dennis, on an obligation which Dennis jointly with George apparently owed the bank. Whatever may have been the agreement between Dennis and George respecting the notes which George held, and respecting their satisfaction in whole or pro tanto from the proceeds of the sale of the goods, it was undoubtedly agreed between them that the money was to be turned over to the bank and applied in satisfaction of the bank’s claim. Since this was true, the money which Dennis paid into the bank, even though as between Dennis and George the amount of it ought to be treated as a payment on the notes, the payment, if any, was made at the time the funds were turned over, which was some time in 1884. Lack of information as to the time or the amount of those credits did not preserve his right to make an indorsement as of the date when he acquired the information and not as of the date when in fact the payment was made. Under these circumstances George’s indorsement on November 5, 1887, did not operate to revive the promise, nor was the statute thereby stopped and a right of action preserved. It is exceedingly doubtful whether the transaction would amount to a payment by Dennis with a right of application by his creditor. This position need *374 neither be analyzed nor justified, for the matters first referred to wholly , dispose óf the contention.
■ The appellant'complains of the examination of the plaintiff respecting a conversation had between him and his counsel at the time: of his verification of the second complaint. With respect to the allegation of a transfer to Wilber and an indorsement to himself, this varied from the allegations in the original pleading. Whether the case would be reversed for this error we need not determine. Undoubtedly the plaintiff could be inquired of respecting the circumstances of the verification, and the considerations which led him to verify a complaint showing a title totally different in its origin from the one originally averred.. He could give his explanation, state his reasons, and it would be left for the jury to determine their value and their force. It was not proper for counsel to interrogate him specifically as to the conversation between counsel and client on the subject. Doubtless the subject-matter was proper enough, but the form of the inquiry was open to criticism.
The record presents no other matters which need be adverted to, and for the error committed by the court with respect to the depositions the judgment must be reversed and the case remanded for a new trial.

Reversed.